UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 05 C 3806 |
| | ) | (96 CR 815-3) |
| M. L. MOORE, #07549-424, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on the motion of Defendant M. L. Moore to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, the motion is denied.

## BACKGROUND

Moore is a former Chicago police officer who was the subject of an undercover investigation of police corruption in 1996. The indictment charged him with racketeering and racketeering conspiracy, extortion, robbery in violation of the Hobbs Act, 18 U.S.C. § 1951 et seq.; distribution and possession of cocaine, cocaine base, heroin, and marijuana; and using and carrying a firearm in relation to a crime of

violence or drug trafficking. He was convicted by a jury and sentenced to 1312 months.

Moore appealed his conviction and sentence to the Seventh Circuit. He requested review of numerous issues: the proper scope and application of the Hobbs Act, the propriety of the firearm offenses as applied to his situation, issues with particular instructions given to the jury, the fact that his trial was not severed from that of one of his codefendants with alleged gang affiliations, the use of an unredacted version of his proffer statement, and the introduction of a post-arrest statement of another codefendant that inculpated him. After considering each of Moore's arguments, the court affirmed his conviction and his sentence. His petition for certiorari was denied by the United States Supreme Court on October 4, 2004.

Less than a year after the denial of certiorari, Moore filed the instant motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Over the ensuing four months, he moved to amend the petition six times. The government then filed its response; thereafter Moore filed a 107-page memorandum in response as well as an additional motion to amend.

## LEGAL STANDARD

Relief under 28 U.S.C. § 2255 is limited to situations where a conviction or sentence is founded in "an error of law that is jurisdictional, constitutional, or

constitutes a fundamental defect which inherently results in a complete miscarriage of justice." Bischel v. United States, 32 F.3d 259, 263 (7th Cir. 1994). However, § 2255 motions are not intended to recapitulate issues addressed on direct appeal; decisions of the appellate court are binding as the law of the case. Daniels v. United States, 26 F.3d 706, 711 (7th Cir. 1994). Absent changed circumstances of fact or law, a court can decline to reconsider an issue already decided on direct appeal. Olmstead v. United States, 55 F.3d 316, 319 (7th Cir. 1995). If an issue could have been presented on direct appeal but was not, it is subject to procedural default. Galbraith v. United States, 313 F.3d 1001, 1006 (7th Cir. 2002). Procedurally defaulted claims can still be considered if the petitioner can show cause for the failure to raise them on appeal and actual prejudice resulting from the initial error. Id.

## DISCUSSION

In light of Moore's multitude of submissions in connection with this motion, we must as a threshold matter consider what precisely comprises the motion under consideration. The rules governing § 2255 proceedings do not specifically address attempts to amend § 2255 motions. In such a circumstance, Rule 12 of the special rules for § 2255 proceedings provides that we may implement any consistent federal rule of criminal or civil procedure, which in this instance would be Federal Rule of Civil Procedure 15(a). See Johnson v. United States, 196 F.3d 802, 805 (7th Cir. 1999).

Under Rule 15(a), Moore's first amendment was made as a matter of right since the government had not yet responded. Subsequent amendments are permissible only by leave of court, which is freely given when justice so requires. If there is an apparent reason not to permit the amendment, such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment," Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962), the motion may be denied. See, e.g., Payne v. Churchich, 161 F.3d 1030, 1036-37 (7th Cir. 1998).

With respect to the amendments requested before the government filed its response, the only argument the government has raised is timeliness. It is unclear whether the government intended to argue only that the amendments involved some delay or that the one-year cutoff for § 2255 claims under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") had expired for some of the changes made. 28 U.S.C. § 2255 ¶ 6. Neither basis alone offers good grounds for denial of the amendments. With respect to the operation of AEDPA's one-year cutoff, the relation back doctrine for amendments in civil cases also applies to § 2255 motions. See, e.g., Rodriguez v. United States, 286 F.3d 972, 980-81 (7th Cir. 2002). Rule 15(c)(2) provides that an amendment filed after the applicable limitations period has expired

relates back to the timely filing date of the original pleading when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Recently, the Supreme Court examined whether the phrase "conduct, transaction, or occurrence" encompassed every event relating to the trial or conviction under attack and concluded that it did not. See Mayle v. Felix, 125 S. Ct. 2562, 2566 (2005). Instead, the new ground for relief must be supported by facts alike both in time and in type to those in the original pleading. See id.[1]

Applying the teaching from Felix to Moore's two untimely amendments, we conclude that they do not relate back to the original pleading. Specifically, the November 29 motion to amend presents claims of official interference and an argument of factual innocence. These issues are not based on facts of the same time and type as those Moore had previously raised. As for the 107-page "memorandum in support" also filed November 29, it consists primarily of numerous new arguments and text of cases or portions thereof with no development or connection to the specifics of Moore's contentions. A litigant, whether pro se or not, has a responsibility to present

---

[1] Although Felix specifically dealt with a petition filed under 28 U.S.C. § 2254 by a state prisoner, there is no principled reason why its effect should not reach § 2255 as well.

cogent, targeted argument, and we will accordingly not sift through such a voluminous, rambling submission. U.S. v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991).

That brings us to the six amendments filed before the one year expired. Although delay is often a factor that must be considered in assessing a motion to amend, it is seldom sufficient by itself to warrant denial of leave. See Dubicz v. Commonwealth Edison Co., 377 F.3d 787, 793 (7th Cir. 2004). Particularly in cases where the delay is not substantial, the amendment will be allowed unless the party opposing it would be significantly prejudiced. Here, the government was aware of Moore's additional assertions that were filed as of the date of its response (October 26, 2005) and addressed them. Consequently, we cannot conclude that the government was prejudiced by their inclusion in the motion. With respect to changes Moore attempted to insert after the government filed its response, the analysis changes. The government has had no opportunity to respond to whatever new matter Moore raised after October 26, and the resulting prejudice is sufficient to disallow the amendments even if they did relate back to previous submissions.

Thus, we turn our attention to the claims Moore submitted between June 29 and September 26, 2005. The timeliness of these claims is only the first hurdle Moore faces; we must next examine whether they are procedurally properly before us. A party seeking relief under § 2255 must, with a few exceptions, present claims that are not

procedurally defaulted. A claim is procedurally defaulted if a party could have raised it for the first time on direct appeal but did not. Belford v. United States, 975 F.2d 310, 313 (7th Cir. 1992), overruled on other grounds by Castellanos v. United States, 26 F.3d 717, 719-20 (7th Cir. 1994). If a procedurally defaulted argument does not raise a constitutional issue, it is barred from collateral review. Id. Constitutional issues that are procedurally defaulted can still be reviewed if the movant shows good cause for the failure to present it to the appellate court and prejudice that would result if it were not reviewed. Id. In addition, questions of ineffective assistance of counsel are generally exempt from procedural default. Massaro v. United States, 538 U.S. 500, 508-09 (2003). Finally, issues that were presented to a court of appeals will not be reconsidered on collateral review unless the movant can demonstrate an intervening change in circumstances. Olmstead v. United States, 55 F.3d 316, 319 (7th Cir. 1995).

Applying these principles to Moore's claims reveals that several are procedurally defaulted: the claimed lack of probable cause for his arrest, the alleged failure to poll the jury, and the content of the instructions given to the jury that Moore insists directed the factfinders to return a verdict of guilt, and the nonsensical contentions he makes regarding perceived res judicata, collateral estoppel, or double jeopardy effect of the findings of a secret juror in a civil proceeding he contends took place before Judge Williams simultaneous to his criminal case. These claims are barred from collateral

review. Similarly, Moore's arguments regarding the admission of his unredacted proffer statement and of a post-arrest statement by one of his codefendants were considered during his direct appeal, and he has presented no viable reason why they should be revisited.

And so we are left with the potentially viable claims of Moore's motion. All involve issues of ineffective assistance of counsel. First, Moore contends that his attorney's performance was constitutionally deficient because he failed to argue that the evidence presented at trial was an insufficient basis for a conviction. Second, he takes issue with the failure to move to suppress or object to the use of testimony or taped conversations of codefendants and government witnesses. Next, he contends that his attorney was operating under an impermissible conflict of interest by representing Moore and the City of Chicago at the same time. Finally, he targets counsel's performance during the appellate stage by claiming that his attorney failed to consult with him during the appellate proceedings and failed to request a rehearing of his appeal after the Supreme Court issued its decision in Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004).

We review claims of ineffective counsel under the two-prong test delineated by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). Under this test, a party asserting ineffective assistance of counsel must demonstrate

both that counsel's performance was deficient and that the deficient performance prejudiced the defendant. Id. The deficiency prong requires a defendant to demonstrate that the representation received was objectively unreasonable considering all the circumstances. Id. at 688, 104 S. Ct. at 2064, 2065. Counsel's conduct is presumed, and strongly so, to satisfy professional standards. Id. at 689. To overcome the presumption, a complaining defendant must "establish specific acts or omissions of his counsel that constitute ineffective assistance." See Berkey v. United States, 318 F.3d 768, 772 (7th Cir. 2003).

None of the alleged deficiencies Moore identifies presents an example of constitutionally inadequate representation. The evidence presented at trial against Moore was substantial, so it was a permissible choice for counsel not to advance an argument to the trial or appellate court that it was insufficient to support a verdict of guilt. Part of the process of developing a strategy is to determine which issues have sufficient merit to bring them to the court's attention; merely throwing out every conceivable argument demonstrates a singular lack of strategy. See Howard v. Gramley, 225 F.3d 784, 791 (7th Cir. 2000).

The same principle applies to Moore's second point as well. His primary defense was one of public authority, advanced through contentions that his activities were part of an operation to locate and apprehend drug dealers. To help establish this

defense, he stipulated to the admission of the very statements with which he now takes issue. Moore's counsel could not block the government's use of these materials and still advance the main defense theory, and his conduct does not become deficient because the jury accepted the government's interpretation of what these witnesses had to say rather than Moore's alternative explanation. See Kokoraleis v. Gilmore, 131 F.3d 692, 696 (7th Cir. 1997).

With respect to Moore's contention that his counsel did not provide conflict-free representation, he is correct that the Sixth Amendment guarantees that criminal defendants will be represented by counsel whose professional loyalty to that defendant is not compromised by a conflict of interest. See Hall v. United States, 371 F.3d 969, 973 (7th Cir. 2004). However, there is no indication that Moore raised the issue of the alleged conflict before Judge Williams. As a result, he must show actual prejudice that negatively impacted his counsel's representation of him. See United States v. Lafuente, 426 F.3d 894, xxx (7th Cir. 2005). He has not done so; his support for the claims of conflict consist of vague insinuation that his counsel was double dealing him to curry favor with the City of Chicago, who was not a party to this case. Moore gives no hint as to the matters in which his counsel represented the City that would compromise his loyalty to Moore in this case, and we will not presume that any exist

without concrete assertions to assess. Consequently, this argument does not warrant relief.

Turning our attention to Moore's claims about his appellate representation, we note that Moore is also correct that attorneys have a duty to communicate with their clients during the representation process. However, even assuming that Moore's attorney was completely uncommunicative during the appeal, Moore must still show that the lack of communication prejudiced his ability to prevail on appeal in order to satisfy the two-prong test of Strickland. The briefs filed in the appeal, though ultimately unsuccessful, presented several legitimate arguments that were fully considered by the appellate court. Moore has identified no issue or point of which he informed his counsel while the appeal was pending that could have ultimately made the appellate court reach a different outcome. See McCleese v. United States, 75 F.3d 1174, 1180 (7th Cir. 1996). As a result, he cannot show that he was prejudiced by whatever lack of communication existed.

Finally, Moore's allegations with regard to a rehearing before the appellate court to take into account the Supreme Court's decision in Crawford v. Washington suffer from a fundamental flaw. In this circuit, the rule announced in Crawford has been held not retroactively applicable for use in cases of collateral review. Bintz v. Bertrand, 403 F.3d 859, 865-67 (7th Cir. 2005); Murillo v. Frank, 402 F.3d 786, 790-91 (7th Cir.

2005). An attorney does not provide ineffective assistance by not making an argument that will not prevail. See Howard, 225 F.3d at 791.

## CONCLUSION

Based on the foregoing, Moore's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is denied.

*Charles P. Kocoras*
Charles P. Kocoras
Chief Judge
United States District Court

Dated:   January 18, 2006